# UNITED STATES DISTRICT COURT

for the

Eastern District of Louisiana

_Kelton Spann #325770_

Petitioner's Name, Prisoner Number

VS.

_Warden Greg Longino_

Respondent (person having custody of petitioner)

_-3176_

Social Security Number

# 16-3723

Docket Number

# SECT. J MAG 3

### PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

1.  The name and address of your present place of confinement: _ST Tammany Parish Jail  1200 Champagne Street Covington, La 70434_

2.  Are you presently in custody pursuant to the conviction(s) or sentence that you seek to challenge here?

    Yes _X_     No _____

3.  **With regard to the conviction(s) or sentence you are attacking state:**

    a.  The name, address, and parish of the court entering the judgment of conviction:
        _22ND J.D.C. Washington Parish_

    b.  The date of judgment of conviction: _August 29, 2011_

    c.  The length of your sentence: _15 years_

    d.  The nature of each offense you were convicted of: _poss of hydrocodone, poss with the intent to distribute cocaine, felon in poss of a firearm, production and manufacture of cocaine_

    e.  Whether you were convicted of each offense following a plea of:

        i.   Not guilty _____

        ii.  Guilty _X_

        iii. Nolo contendere _____

        If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details: _____

        _____

    f.  If you pleaded not guilty, what kind of trial did you have? (check one)

        i.   Jury _____

        ii.  Judge only _____

TENDERED FOR FILING

APR 25 2016

U.S. DISTRICT COURT
Eastern District of Louisiana

g.      Did you testify at trial?

Yes _____   No X

4.      **Statute of Limitations**

28 U.S.C. § 2244(d) establishes a 1 year statute of limitations for an application for a writ of habeas corpus.  Is

this application barred by this 1-year period of limitation?    YES _____   NO X

If not, state why not?   _Post-Conviction filed in District Court in September of_

_2013, decision rendered on Jan. 2, 2014, First Circuit Court of_

_Appeal ruled on June 4, 2014 Louisiana Supreme Court on_

_May 15, 2015_

5.      **Grounds for Present Petition**

State _concisely_ each and every ground on which you claim that you are being held unlawfully.  Summarize briefly

the facts supporting each ground.  You may attach pages stating additional grounds and facts supporting same.

**WARNING:  Absent exceptional circumstances, if you fail to set forth all grounds in this petition, you will**

**be barred from presenting additional grounds at a later date.**  _See_ 28 U.S.C. § 2244.

a.      Ground one:  _Sixth Amendment Violation, Ineffective_

_Assistance of Counsel_

Supporting FACTS (state briefly without citing cases or law) _____

_( See attached Memorandum In   )_
_( Support of Writ of Habeas Corpus )_

b.      Ground two:  _4th Amendment Violation_

Supporting FACTS (state briefly without citing cases or law) _____

_( See attached Memorandum  )_
_( In Support  )_

c.   Ground three: _____

_____

Supporting FACTS (state briefly without citing cases or law) _____

_____

_____

_____

_____

_____

d.   Ground four: _____

_____

Supporting FACTS (state briefly without citing cases or law) _____

_____

_____

_____

_____

**6.   Direct Appeals**

a.   Did you file a direct appeal from your judgment of conviction or sentence?

Yes _X_ _ No _____

b.   If you did file a direct appeal, for you initial appeal, answer the following:

   i.   The name and address of the court where you first appealed:

   *First Circuit Court of Appeal*

   ii.   The result of this appeal.

   *denied*

   iii.   The date of the decision. *Dec. 21, 2012*

   iv.   The citation and/or docket number of the decision (if known). *2011-KA-2366*

_____

v.    The grounds raised in your present habeas petition that were raised in this direct appeal.

*4th Amendment Violation*

c.    If you sought review of your appeal by a higher court, answer the following:

i.    The name and address of the court where you next applied for review:

*Louisiana Supreme Court*

ii.    The result of this appeal.

*denied*

iii.    The date of the decision. *August 30, 2013*

iv.    The citation and/or docket number of the decision (if known).

*2013-K-0219*

v.    The grounds raised in your present habeas petition that were raised in this earlier application for review:

*4th Amendment violation*

d.    If you filed a petition for certiorari in the U.S. Supreme Court, please answer the following with respect to each such petition:

i.    The result. *N/A*

ii.    The date of the result. *N/A*

iii.    The citation and/or docket number (if known).

*N/A*

iv.    The grounds raised in your present habeas petition that were raised in this earlier appeal..

7.    **Post-Conviction or other Collateral Review**

a.    Other than the direct appeals described above, have you previously filed any petitions, applications, or motions with respect to your judgment of conviction or sentence in the state court?

Yes _X_    No _●_

b. If so, give the following information with regard to the first petition, application, or motion you filed:

    i. The name and address of the court. *22ND JDC Washington Parish*

    ii. The nature of the proceeding. *Post-Conviction Application Sixth Amendment Violation Ineffective Assistances of Counsel, 4th Amendment Violation*

    iii. The date it was filed. *September of 2013*

    iv. The grounds raised in your present habeas petition that were raised. *Ineffective Assistance of Counsel, 4th Amendment Violation, Sixth Amendment Violation*

    v. Did you receive an evidentiary hearing? Yes _____ No _X_

    vi. The result. *The Court held that Petitioner Spann failed to meet his burden of proving that he is entitled to relief.*

    vii. Did you appeal or file an application for review to higher state courts having jurisdiction? Yes _X_ No _____

    viii. If not, briefly explain why you did not. _____

    ix. If so, name the court(s) to which you applied, the date of the final result in each court, and the result in each court: *First Circuit Court of Appeal – June 4, 2014 denied. Louisiana Supreme Court – May 15, 2015 - denied*

c. If you filed a second petition, application, or motion, give the following information with regard to that filing:

    i. The name and address of the court. _____

    ii. The nature of the proceeding. _____

    iii. The date it was filed. _____

    iv. The grounds raised in your present habeas petition that were raised.

v.   Did you receive an evidentiary hearing?   Yes _____   No _____

vi.   The result. _____

_____

vii.   Did you appeal or file an application for review to higher state courts having jurisdiction?   Yes
_____   No _____

viii.   If not, briefly explain why you did not. _____

_____

ix.   If so, name the court(s) to which you applied, the date of the final result in each court, and the
result in each court: _____

_____

_____

_____

_____

_____

## 8. Exhaustion of State Remedies

Generally, any ground that you seek to present here must have first been presented to the state courts.  See
28 U.S.C. § 2254(b).  Attach copies of previous petitions, applications, or motions filed with the state courts where
you presented each of the grounds listed in Part 5.  If any of the grounds listed in Part 5 above have not been previously
presented to the highest state court that has the power to consider it, state briefly what grounds were not so presented, and
give    your    reasons    for    not    presenting    them:
_____

_____

_____

_____

## 9. Prior Federal Habeas Petitions

a.   Have you filed any other petition in any federal court where you sought to attack the same conviction(s)
or sentence you are challenging here?   Yes _____   No _X__

b.   If so, give the following information:

i.   The name and address of the court where it was filed. _____

_____

ii.   The docket number. _____

iii.   The grounds raised. _____

_____

10. **Other Pending Actions**

   a.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment you are attempting to attack here?   Yes _____ No _X___

   b.   If so, please give the following information:

      i.   The name and address of the court. _____

      ii.   The docket number of the action._____

      iii.   The nature of the proceeding. _____

11. **Attorneys Representing Petitioner**

Give the name and address of each attorney who represented you in the following stages of the judgment attacked herein:

   a.   At the preliminary hearing. _____

   b.   At the arraignment and plea. _James Talley Attorney, 402 N. Jefferson Ave Covington, La 70433_

   c.   At trial. _____

   d.   At sentencing. _Attorney James Talley Same as above_

   e.   On appeal. _Frank Sloan Attorney Mandeville, La._

   f.   In any post-conviction proceeding._____

   g.   On appeal from any adverse ruling in a post-conviction proceeding. _____

12. **Other Sentences**

   a.   Where you sentenced for more than one offense in the same court and at the same time?
Yes _____ No _X_

   b.   Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack? Yes _____ No _X_

i.    If so, give the name and location of the court which imposed the sentence to be served in the future. _____

_____

ii.   Give the date and length of the said sentence. _____

_____

iii.  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?  Yes _____  No ___X___

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____

Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct.  Executed on _April 21, 2016___
(date)

_Kelton Spann_
Signature of Petitioner

8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KELTON SPANN #325770                    DOCKET No. _____

    VERSUS                          SECTION: _____

WARDEN GREG LONGINO

_____                _____
     FILED                               DEPUTY CLERK

## MEMORANDUM IN SUPPORT OF WRIT OF HABEAS CORPUS 2254

MAY IT PLEASE THIS COURT:

    Now into Court comes petitioner Kelton L. Spann pro-se who respectfully move this Honorable Court to grant the Habeas Corpus and issue the writ for the following reasons:

### JURISDICTION

    Jurisdiction is vested in this Honorable Court pursuant to 42 U.S.C. 2254

(1)

On June 7, 2010, petitioner entered a plea of not guilty to the original bill of information. On January 31, 2011, petitioner entered a plea of not guilty to the amended bill of information. On June 17, 2011, petitioner's motion to Suppress evidence was held. After taking the matter under advisement, on July 20, 2011, the Court denied the motion. Pursuant to a plea bargain, on August 4, 2011, petitioner entered a Crosby guilty plea reserving his right to appeal the denial of his Motion to Suppress Evidence. On August 29, 2011, petitioner was Sentenced concurrently to the following sentences:

Count 1: five years imprisonment at hard labor

Count 2: fifteen years imprisonment at hard labor, 2 years without benefit of parole, probation or suspension of sentence.

Count 3: 6 months in the parish jail

Count 4: ten years imprisonment at hard labor without benefit of parole probation or suspension of sentence.

Count 5: fifteen years imprisonment at hard labor, 5 years without benefit of parole, probation or suspension of sentence.

## STATEMENT OF THE CASE

Petitioner Kelton L Spann was charged in a four (4) Count Bill of Information filed on March 8, 2010. On January 27, 2011, the bill of information alleged that the offences occurred on January 21, 2010, in Washington Parish. The five counts contained in the amended bill of Information are:

Count: 1  Possession of hydrocodone in violation of of La R.S. 40:968 C

Count: 2  Possession of Cocaine in violation of La R.S. 40:967 A(1)

Count: 3  Possession of Marijuana in violation of La R.S. 40:966 C

Count: 4  Convicted felon in possession of a firearm in violation of La R.S. 14:95.1

Count: 5  Production and manufacture of crack cocaine in violation of La R.S. 40:967 A

The trial Court granted petitioner's Motion for Appeal on September 2, 2011. On December 21, 2012, the First Circuit affirmed petitioner's convictions and sentences. On August 30, 2013, the Louisiana Supreme Court denied petitioner's Writ of Review.

In September of 2013, petitioner filed his State Post-Conviction Application into the District Court. On Jan 2, 2014, the District Court denied relief. Moreover, on June 4, 2014, the First Circuit Court of Appeal affirmed the District Court decision. On May 15, 2015, the Louisiana Supreme Court denied Application for Writ of Certiorari/Review on the Post-Conviction State claims. Therefore, petitioner has prepared the issues for this Honorable District Federal Court to review the claims that has been presented to the State Courts, and is in time in accordance 28 U.S.C. β 2244(d) to address these issue in this Honorable Court.

## FACTS OF THE CASE

On March 11, 2011, petitioner sent a formal letter to Attorney James Talley requesting a copy of the incident/police report. Attorney Talley failed to respond, so petitioner forwarded a complaint to the Louisiana Disciplinary Board for Counsel's on May 3, 2011, advising the board that Attorney Talley was in violation of his ethical standards, for his failure to comply

With petitioner request to receive a copy of the police report.(
)

Thereafter, on or about May 11, 2011, Attorney Talley showed up at the parish jail, with a copy of the police report in an envelope. At this time petitioner informed Attorney Talley that on January 11, 2010 he had a job in Covington, La where he worked for ST Tammany Council on Aging from 7:30am to 3:30p.m as a delivery driver with check stub that would substantiate this fact, along with the names of Renard Brown, Ricardo Brown and Curtis Harris, three (3) witnesses who would testify that there were only two visitors that came to the residence of 745 Dum Street from 5:30p.m when they arrived until the execution of the warrant by law enforcement agencies. Additionally, petitioner informed Attorney Talley that these (3) witnesses were at the residence when the warrant was executed. Moreover, the witnesses names were on the police report as being present at the residence in the living room during the execution of the warrant. (See Police Report)

Petitioner tried to give Attorney Talley the phone numbers of two (2) of the witnesses, to have them subpoenaed for Court. Attorney Talley advised petitioner that he would come back to the parish jail

Six (6) to Seven (7) days before the Suppression hearing to obtain the addresses. As petitioner was headed back to the dorm in the jail, he opens the envelope and observed that the names of the witnesses were provided in the police report as being present at the residence during the execution of the warrant. Ironically, Attorney Talley failed to show up at the Parish jail, before the suppression hearing to obtain the information to subpoena the witnesses. The suppression hearing was held without the pivotal testimony of the witnesses that would have established that the assertions of the search warrant affidavit in the last two paragraphs were false.

Before the Suppression hearing, petitioner had filed a pro-se motion to act as Co-Counsel due to the deficiency showed in his appointed Attorney handling of his case. However, the trial Court at the Suppression hearing advised petitioner that he could not be represented and representative. The Judge informed petitioner that he could represent himself or allow Attorney Talley to present his case. Petitioner only wanted to act as Co-Counsel to assist with his case due to Attorney Talley attitude toward his case. Furthermore, petitioner informed the trial Court he did not want to represent himself. (see Transcript 8-9)

Thereafter, the Court called a recess and petitioner was sent back to the parish jail to have lunch. After lunch when petitioner entered the courtroom and stood at the defense table, Attorney Talley advised petitioner it would be better for him to represent himself, in regards to the Motion to Suppress. Furthermore, when the proceeding commenced, Attorney James Talley instituted the action of the motion for petitioner Spann to represent himself. This was after petitioner Spann stated in open Court that he did not want to represent himself.

## The State Courts Ruling was applied Contrary to Federal Courts law on the issues addressed and the United States Supreme Court Precedents

The State Court's resolution of petitioner claims was Contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. 28 U.S.C 2254 (d)(1),(2) Lindh v Murphy, 521 U.S. 320

117 S.ct 2059, 138 L.Ed 2d 481 (1997). If clearly established federal law exists, a State-Court decision is contrary to it if the State Court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently, than the Supreme Court has done on a set of materially indistinguishable facts. Bell v Coney, 535 U.S. 685, 694, 122 S.ct 1843, 152 L.Ed 2d 914 (2002).

A State-Court decision is an unreasonable application of clearly established federal law when the State Court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of petitioner's case. Wiggins V Smith, 539 U.S. 510, 520, 123 S.ct 2527, 156 L.Ed 2d 471 (2003).

## ISSUES PRESENTED FOR REVIEW

Petitioner was coerced into Self-Representation by his appointed Attorney at the Suppression Hearing in violation of his Sixth Amendment Right.

Petitioner was appointed an attorney who failed to investigate Subpoena witnesses, which establishes his incompetent that violated petitioner's Sixth Amendment Right of Effective Assistance of Counsel.

## LAW AND ARGUMENT

An accused Sixth Amendment Right to the assistance of Counsel is one of the most fundamental components of our criminal justice system. Though legal representation, the defendant's other pretrial rights are secured. See United States v Cronic, 466 U.S. 648; 104 S. Ct 2039; 80 L. Ed 2d 657 (1984); Gideon v Wainwright, 372 U.S. 335, 83 S. Ct 792, 9 L. Ed 2d 799 (1963). The right to counsel means the right to the effective assistance of counsel. McMann v Richardson, 397 U.S. 759, 90 S. Ct 1441, 25 L. Ed 2d 763 (1970)

In the instant case, Attorney James Talley was appointed from the Washington Parish Public Defender's office to represent petitioner in his criminal case. However, Attorney Talley failed to investigate the case by failing to interview potential crucial witnesses and his failure to have them Subpoenaed for court after petitioner advised Attorney Talley

on what their testimony would consist of at the Motion to Suppress hearing. Moreover, Attorney Talley coerced petitioner to represent himself to avoid counsel's obligation to protect his Clients' 4th Amendment Rights, due to standards and the unwritten policy of the Washington Parish Public Defender's Office.

Pretrial investigation is essential to the effective assistance of Counsel. "A lawyer must engage in a reasonable amount of pretrial investigation and at minimum......interview potential witnesses and make an independent investigation of the facts and circumstances of the case. <u>Nealy v Cabana</u>, 764 F.2d 1173, 1177 (5th cir 1985). Strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffective assistance of counsel case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances applying a heavy measure of deference to counsel judgments.

In the case at bar, any other competent lawyer in the legal profession would have subpoenaed the witnesses for the suppression hearing, from the information relayed by petitioner Kelton Spann, that the witnesses would testify that only two (2) visitors came to the residence from 5:30 p.m until the execution of the warrant. Moreover, that the search warrant was signed at 8:05 p.m. In addition, to the fact the witnesses names were provided on the police report as being present during the execution of the warrant.

Furthermore, there is not one licensed Attorney in the United States who would coerce his client to represent himself. It was an unethical ploy by Attorney Talley to advise petitioner to represent himself, so he would not offend the public Defender's office, unwritten policy and to avoid chastisment from the Supervisor of the office, for pursuing the Motion to Suppress.

The Bureau of Justice Technical Assistance Report of the Louisiana 22ND Judicial District Public Defender's

office does not reveal a vigorous motion practice," One conflict lawyer stated "that public defenders are punished for filing Motion to Suppress and for going to trial." Another lawyer stated "that there is not a client centered culture." "The public defenders are not rewarded for working hard." "They are rewarded for not rocking the boat." One staff attorney revealed that he was chastised by Mr. Simmons Supervisor of Washington / ST Tammany Parish Public Defender's Office for requesting a transcript needed to challenge a DuI. Another staff lawyer said "that some of the attorneys were not always willing to suit up and fight."

Petitioner Spann should not have been forced to choose between incompetent counsel and no counsel at all. There is an unwritten policy in the 22nd J.D.C. Public Defender's Office not to challenge the State's case on the Motion to Suppress. Clearly, this was the reason why Attorney Tally induced and advised petitioner to represent himself at the Suppression hearing held on June 17, 2011.

In *Crandell v Bunnell*, 25 F. 3d 754 (9th Cir 1994); the federal Court held that a criminal defendant may be asked to choose between waiver and another course of action so long as the choice presented to him is not constitutionally offensive. Petitioner was appointed an attorney who failed to interview and subpoena his witnesses for the suppression hearing. Moreover, on the day of the suppression hearing, Talley advises petitioner it would be better for him to represent himself because petitioner maintains due to an unwritten policy of the public defender's office not to challenge the State's case on a motion to suppress. Petitioner was appointed an Attorney by the Court, but in actuality he had no lawyer at all. Petitioner was forced to choose between incompetent counsel and no counsel at all at the suppression hearing. Consequently, petitioner decision to proceed pro-se was therefore involuntary because it placed him in a dilemma of unconstitutional magnitude in violation of his Sixth Amendment Right. Before the recess of the Suppression proceeding, it was understood by the trial court and petitioner that Talley would act as the lawyer in the suppression hearing. Spann was brought back from the jail and entered the Courtroom, a conversation transpired between petitioner and Talley

(13)

which is not in the record that compel Spann to represent himself. This is a question of fact that could only be resolved in an evidentiary hearing were Attorney Talley is placed on the witness stand for direct examination on what transpired in this Conversation. See *Adams*, 875 F.2d at 1144-45. An ineffective assistance of counsel claim under the standards announced by the Supreme Court in *Strickland v Washington*, 466 U.S. 668, 104 S.ct 2052, 80 L.Ed 2d 674 (1984). First, a defendant must demonstrate that Counsel's representation fell below an objective standard of reasonableness, with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance." *Black*, 962 F. 2d at 401 (quoting *Strickland*, 466 U.S. at 688, 104 S.ct at 2064.) Second, if counsel was ineffective, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine Confidence in the outcome." *Strickland*, 466 U.S at 694, 104 S.ct at 2068. Accordingly an attorney's strategic choices usually based

on information supplied by the defendant and gathered from a thorough investigation of the relevant law and facts, are virtually unchallengeable. Strickland 466 U.S. at 691, 104 S.Ct at 2066. The failure to interview eyewitnesses to a crime may strongly support a claim of ineffective assistance of counsel. See Gray v Lucas, 677 F.2d 1086, 1093 n.5 (5th Cir 1982) (noting that attorney's failure to investigate crucial witness may constitute inadequate performance) cert denied, 461 U.S. 910, 103 S.Ct 1886, 76 L.Ed 2d 815 (1983)

   In this particular case, Attorney Talley failed to interview and subpoena the witnesses when it was evident from the police report that these three (3) individuals were present at the residence upon the police officers arrival. The surveillance by law enforcement members had to be conducted around the approximate time of 5:00p.m until the signing of the search warrant at 8:05p.m. However, the State Court asserted without any support in the record that the surveillance was conducted earlier in the day which would have refuted petitioner witnesses testimony. However, the facts maintained

by the State Court are not supported by the record and
Cannot be used to defeat the fact that the witnesses
should have been subpoenaed by Attorney Talley for the suppression
hearing. Nothing has been established in the record that
specify the exact time the surveillance was conducted by
law enforcement on the residence of 908 Dan Street.
Furthermore, noone, can assure that the surveillance was
not around the time between 5:00 p.m. until the signing
of the search warrant at 8:05 p.m. on Jan 21, 2010. (See attached) Search warrant

If Attorney Talley would not have circumvented his obligation
under the sixth Amendment, and applied his skills and
knowledge of the law to protect petitioners rights under
the 4th Amendment. From the information Attorney Talley had
acquired through petitioner and a review of the police report,
he would have placed petitioner on the witness stand at
the suppression hearing, to testify on the events on Jan 21, 2010,
that petitioner left Bogue projects at 6:45 a.m. to be at

work for 7:30 a.m. Moreover, petitioner testimony of coming to the residence of 908 Dan Street at 5:00 o'clock p.m after work. In addition, to Talley providing the check stubs as evidence to corroborate this fact of his job and petitioner's testimony that no one else had access to the residence during this time period on Jan 21, 2010.

Furthermore, if Attorney Talley would have subpoenaed Renard Brown, Ricardo Brown, and Curtis Harris to testify that after their arrival at 908 Dan Street from 5:30 p.m., only two visitors came to the residence before the execution of the warrant. This evidence would have disputed the assertions in the search warrant affidavit that during the police surveillance, agents observed numerous known drug dealers in and out of the residence and there was also traffic in and out of the residence consistent with that of narcotic trafficking. (see attached Search warrant)

In *United States v Leon*, 468 U.S. at 923, 104 S.Ct at 3421, four instances in which suppression remains an appropriate remedy are (1) where the issuing magistrate was misled by information the affiant knew was false or would have known was false except for a reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

It is apparent from the facts and circumstances articulated in this case that affiant Lieutenant D. Ray Phelps had knowledge that the last two paragraphs of

information in the search warrant affidavit were suspect, because the three (3) visitors located at 908 Dan Street would have been considered drug dealers or apart of the people that was allegedly observed as narcotic trafficking. Moreover, once inside the residence upon execution of the warrant, lieutenant D. Ray Phelps released the visitors from custody because of them having no knowledge of drug activity. Peculiarly, LT D Ray phelps took their statement as being credible.

Surely if LT D. Ray Phelps had seen this activity of drug trafficking at the residence over the course of the survelliance, there is noway probable he would have released the visitors located in the living room of the residence as not being apart of this allegedly activity. This constitutes a reckless disregard for the truth by LT D. Ray Phelps which is enunciated in Leon in which Suppression remains an appropriate remedy. (see attached police Report)

Accordingly, this would have invalidated the Search warrant applying the exclusionary rule because there are no other facts in the search warrant affidavit that would substantiate probable cause. Demonstrating that the outcome of the case would have been different, resulting in Suppression of the items seized. Attorney Talley was ~~his~~ petitioner lawyer before the suppression hearing and he should have subpoenaed the witnesses for that hearing.

To receive evidentiary hearing, federal habeas petitioner must establish one of six factors: (1) the merits of factual dispute were not resolved in state hearing, (2) state factual determination is not fairly supported by the record as a whole, (3) fact finding procedure employed by State court was not adequate to afford a full and fair hearing (4) there is a substantial allegation of newly discovered evidence: (5) material facts were not adequately developed at State-court hearing or (6) for any reason it appears that state trier

of fact did not afford petitioner full and fair fact hearing.

Petitioner Spann case fit the criteria stated above and a evidentiary hearing should be held. The factor that fit the standards in petitioner's case involves the merits of factual dispute weres not resolved in State hearing, State factual determination is not fairly supported by the record as a whole, fact finding procedure employed by State Court was not adequate to afford a full and fair hearing, material facts were not adequately developed at State-Court hearing and facter number (6). Therefore, in the interest of justice an evidentiary hearing should be held from the factors demonstrated above. See Boyd v Waymart, 579 F.3d 330 (3rd Cir 2009); Byrd v Collins, 209 F.3d 486 (6th Cir 2000)

## CONCLUSION/PRAYER

WHEREFORE, petitioner prays that this Honorable Court issue the writ of habeas corpus and/or that petitioner be afforded an evidentiary hearing in accordance with the Federal law.

Respectively Submitted

cc/file
KS

_Kelton Spann_
KELTON L SPANN

THE COURT:

I'm asking you:  Is it your desire

to waive counsel in this case?

MR. SPANN:

No, sir.  I just would like to

participate in the case in regards to the

effects of the affidavit.  I have did

extensive research on this case, and I am

a paralegal.  I do have extensive

education, two-year education.  I have a

paralegal certificate right here; it's a

copy.

THE COURT:

You have the right, obviously, in

defense to consult with your attorney and

to, and to allow him to represent you.

Otherwise, you are going to be waiving

your attorney and you have that right to

waive it.  I wouldn't -- I mean, all I can

do is tell you what you're giving up when

you waive an attorney.

But you've indicated that you don't

want to waive your attorney, and I will

allow you to consult with your lawyer; but

Mr. Talley is going to be your lawyer and

act as the lawyer in this case.

MR. SPANN:

Well, Your Honor, may I speak for a

second?

THE COURT:

I tell you what:  You-all it's

quarter to 2.  We're recessing and coming

1   back at 2:30.
2              (LUNCH RECESS TAKEN.)
3       THE COURT:
4              Let's proceed.  Which motion do we
5          have first?
6       MR. TALLEY:
7              The motion to act as -- well, if not
8          as co-counsel, to represent himself, Your
9          Honor.
10      THE COURT:
11             And I have -- I'm going to ask you
12         again, Mr. Spann, is it your desire to
13         waive counsel in this case and represent
14         yourself?
15      MR. SPANN:
16             Yes, only for this proceeding.
17      MR. TALLEY:
18             Well -- just --
19      MR. SPANN:
20             Yes, yes.
21      MR. TALLEY:
22             And I will consent to act as his
23         advisor, Your Honor, but he's representing
24         himself.
25      THE COURT:
26             You've discussed it with him, Mr.
27         Talley?
28      MR. TALLEY:
29             I have, Your Honor, in detail.
30      THE COURT:
31             And you believe that he's aware of
32         any risk and pitfalls that may confront

# SEARCH WARRANT

STATE OF LOUISIANA

PARISH OF WASHINGTON

To the within named affiant or any other qualified law enforcement officer or officers:

WHEREAS: On this 21st day of January 2010. Lieutenant Donald Ray Phelps of the Bogalusa Police Department / Washington Parish Drug Task Force, Affiant, having subscribed and sworn to an affidavit for a Search Warrant, and I, have under oath examined affiant, am satisfied that probable cause exist:

THEREFORE, IN THE NAME OF THE PEOPLE OF THE STATE OF LOUISIANA, I order and command that you search the following described place:

**908 Dan Street Bogalusa, Louisiana 70427. This is a single-family dwelling constructed of wood and is off white in color. The residence has a small front porch and an open garage on the south side of the residence. The residence itself is located on the east side of Dan Street with the front of the residence facing west.**

During the day and or night including Sundays and holiday, continuing through the night or next day when necessary, and when the thing to be searched is a dwelling or other structure, this writ includes all other structures, vehicles, people and places on the premises where the thing(s) may be found, and if the thing(s) specified be found there to seize, secure, tabulate and make return according to law the following property and things:

Any and all controlled dangerous substance, which are listed in Title 40 of the Louisiana Criminal Code, namely cocaine and/or crack cocaine. Also any records, videos, ledgers, currency, or items believed to be assets from the sale of illicit controlled dangerous substances which is / are believed to be secreted or concealed. Also any and all items used to manufacture and/or distribute cocaine.

ISSUED UNDER MY HAND

THIS 21st day of January 2010 at _8:05 PM_ O'clock.

_____
Judge of the Fourth Ward
Municipal Court
State of Louisiana

# AFFIDAVIT FOR SEARCH WARRANT

STATE OF LOUISIANA

PARISH OF WASHINGTON

BEFORE ME, Honorable Robert J. Black , Judge of the Fourth Ward Municipal Court in and for the City of Bogalusa, State of Louisiana, Parish of Washington, personally appeared Detective Lieutenant Donald Ray Phelps of the Bogalusa Police Department / Washington Parish Drug Task Force, who being duly sworn by me, deposed and said:

THAT probable cause does exist for the issuance of a search warrant authorizing the search of the property and dwelling located at:

908 Dan Street Bogalusa, Louisiana 70427. This is a single-family dwelling constructed of wood and is off white in color. The residence has a small front porch and an open garage on the south side of the residence. The residence itself is located on the east side of Dan Street with the front of the residence facing west.

And to seize, secure, tabulate and make return thereof according to law the following property or things which have been used in the commission of, or which constitutes evidence of, criminal conduct, to wit:

Any and all controlled dangerous substance, which are listed in Title 40 of the Louisiana Criminal Code, namely cocaine (base) and/or crack cocaine.  Also any records, videos, currency, ledgers, electronic storage devices, packaging material, scales or items believed to be assets from the sale of illicit controlled dangerous substances which is / are believed to be secreted or concealed, and such probable cause is based upon the following:

While conducting ongoing narcotics investigations in the City of Bogalusa, Louisiana, Your Affiant, received information in reference to Kelton Spann (B/M, DOB-3/4/1970) of 908 Dan Street Bogalusa, LA and his involvement in the distribution of cocaine in the area.

Your Affiant has received information from various sources that indicated SPANN keeps large amounts of cocaine in his residence located on Dan Street. SPANN is known to get a quantity of powder cocaine as well as crack cocaine. SPANN resells this cocaine for person gain and profit.

51

In December of 2009 Your Affiant received information SPANN had received one quarter (1/4) kilogram of cocaine and was distributing it to numerous person(s) in the area. This information was co oberated by more than one confidential informant (CI).

A subsequent investigation revealed SPANN has numerous arrests and convictions for narcotics related offenses. These arrests include arrests for the possession of up to 400 grams of cocaine.

On January 21, 2010 Your Affiant received information from a CI who provided additional information on SPANN. This CI stated SPANN had recently, within the past twenty-four hours, purchased approximately two and one half (2 ½) ounces of cocaine and was keeping it concealed inside the residence.

On this date, Your Affiant, along with DTF agents and Troopers from the Louisiana State Police conducted surveillance on the residence. During this surveillance, agents observed numerous known drug dealers in and out of the residence. There was also traffic in and out of the residence consistent with that narcotics trafficking.

THAT writ to search the aforesaid residence is requested, and when the thing to be search is a dwelling or other structure, that the writ to search include all other structures, vehicles, peoples and places of concealment of the premises where the thing(s) may be found, narcotics, namely cocaine and/or crack cocaine is being secreted on the property and/or in the dwelling described above.

THAT it may become necessary to conduct the search during the nighttime, on Sunday or holidays, continuing through the night or next day, and affiant request that the writ so provide.

SWORN TO AND SUBSCRIBED before me on this 21st Day of January 2010.

_____
Affiant

_____
Judge, Fourth Ward Municipal
Court, State of Louisiana

52

# BOGALUSA POLICE DEPARTMENT
# INCIDENT REPORT

DATE: 01/28/2010

## NUMBER: 2010000736

Page 6

**Agency:** BPD

**Incident No:** 2010000736

**Author:** PHELPS, LT D RAY

**Title:** SUPPLEMENTAL NARRATIVE

**Report Type:** S

Supplemental Narrative

On January 21,2010 Lt Phelps secured a search warrant for the residence located at 908 Dan St, Bogalusa, La. The residence is occupied by Kelton Spann. During an investigation into the sale of illegal narcotics in the Bogalusa area it was learned that Kelton Spann had in his possession a large quantity of cocaine.

Officers approached the residence (2044 hours) and were attempting to gain entry when a black male known to Lt Phelps as being Kelton Spann ran out the side door (southside) of the residence. Spann was taken to the ground and handcuffed (double locked and checked for tightness). Once the residence was secured by Officers, Spann was brought back into the residence while Officers conducted a search.

In the back bedroom (on a dresser) of the residence Lt Phelps located two glass measuring cups and silverware in which contained a white residue beieved to be cocaine. Also located on the dresser was a small quantity of a green vegtable matter suspected to be marijuana.

In the front bedroom of the residence Lt Phelps located a loaded Bryco Arms "Jennings Nine" 9mm semi auto pistol serial #1514373 in a small blue/grey ice chest at the foot of the bed. The pistol was also equipped with a laser. Lt Phelps also located a shoulder holster in the same ice chest. On the dresser of the bedroom Lt Phelps located an small orange ice chest which contained ten (ten) grams of suspected crack cocaine (one and one half "cookies") and eleven (11) grams of suspected powder cocaine, contained in twenty six "26" individual bags. The orange ice chest also contained mail in the name of Kelton Spann, 908 Dan St Bogalusa La. The suspected cocaine and above pistol were found within three feet of each other. There was aslo a small amount of suspected loose powder cocaine found on the dresser. Lt Phelps also located two hundred and thirteen ($213.00) in US currency on top of the dresser near the above suspected cocaine (Notice of pending forfeiture and seizure filed).

Lt Phelps also located one Remington 22 cal model 552 serial #B1400074 in the enclosed room attached to the carport where Spann's vehicle was parked..

Spann was advised of his rights per Miranda in which he advised that he understood. Spann was advised that he was under arrest and was advised of the charges. Spann was shown a copy of the search warrant. Spann initially denied any knowledge of the cocaine or of the gun. Spann also advised Officers that he did not stay at the residence. Officers advised Spann that there was mail in the residence with his name and address on it and what appeared to be his clothes in the closet of the master bedroom, Spann admitted to staying in the residence and advised that he stayed at the residence alone. When confronted with the evidence Spann admitted that the powder cocaine was his, some for personal use and some to sell "To make a hustle". Spann told Lt Phelps and TFC Miller that the crack belonged to "Dees'No" (Possibly Darrick May). Spann advised that DeesNo left the crack for him to hold. Spann told Miller and Phelps that he allowed "DeesNo" to cook crack at his residence on the previous date and the glass containers also belonged to "DeesNo". Spann admitted that he was present while the crack was cooked/manufactured.

There were also three other males (Renard Brown, Ricardo Brown and Curtis Harris) in the residence (living room), who advised they were visiting Spann watching the "Lakers" game. Warrants check was conducted, none found. Lt Phelps interviewed all three subjects separatly, all

# BOGALUSA POLICE DEPARTMENT
## INCIDENT REPORT

DATE: 01/28/2010                    **NUMBER: 2010000736**                    Page 7

three advised Lt Phelps that they had no idea that Spann had cocaine and weapons. The male subjects were released. The search concluded at 2146 hours. At Spanns request, his keys to his residence were left with his mother, who also advised that she would secure the residence. A copy of the search warrant was left in the residence and his mother was advised of the location.

Spann gave Lt Phelps, TFC Miller and Lt C Hickman a taped statement (recorded by TFC Miller) upon arrival at the Bogalusa Police Department Detective's Office regarding the above information.

The above narcotics were placed in evidence bags to be submitted to the crime lab for analysis. The glassware with suspected cocaine residue also submitted to the crime lab for analysis and fingerprinting.

Spann was properly booked and turned over to the Bogalusa City Jail pending transport to WPSO Jail. It was learned that Spann was to began serving a twelve year sentence for a prior narcotics conviction, as he was to report to WPSO jail on January 28,2010.



# AMERICAN UNIVERSITY

W  A  S  H  I  N  G  T  O  N  ,  D  C

**Louisiana's 22nd Judicial District**

**Public Defenders' Office:**

**A Preliminary Assessment**

TECHNICAL ASSISTANCE REPORT



# Bureau of Justice Assistance

## CRIMINAL COURTS TECHNICAL ASSISTANCE PROJECT

A Joint Program of the Bureau of Justice Assistance, U.S. Department of Justice, and American University's School of Public Affairs

E.  Observations of the Consultant Regarding  Other Areas of Concern

### 1.  Client Relationships

Rules #709, 711, and 713 of the LPDB Performance Guidelines all contemplate a public defender who interviews his client early and completely in order to argue for pretrial release, identify investigative needs, holds a preliminary examination, and otherwise advocates for his client in preliminary court hearings.

While the site visit did not include meetings with clients, there were indications that there were systemic impediments to healthy attorney/client relations. Attorneys are not present at the 72-hour hearing and in many instances do not meet with their clients until arraignment many weeks later. The only interview done at the 72-hour hearing is by the investigator. Attorneys commonly do not vigorously pursue and seldom ask for preliminary examinations. Judge Peter Garcia noted that he had seen instances where the public defender was meeting his client for the first time at arraignment. There is always a "duty day attorney" available for drop-ins at the office rather than having all of the attorneys available. Jail visits do not occur often. One attorney stated that she saw her clients within 30 days after appointment. John Simmons said that he wishes the attorneys saw their clients more, but appeared powerless to do anything about it. In the misdemeanor practice, most of the work with clients is accomplished in court while meeting the client for the first time. What this means is that attorneys, while assigned a client shortly after the 72-hour hearing, often do not meet their clients for 60 days. Without early and periodic meetings with clients, the attorney-client relationship cannot thrive.

### 2.  Motion Practice

Motion practice is a vital part of the effective assistance of counsel.  It is through the filing and arguing of motions that counsel upholds the rights of his clients, suppressing damaging or illegally obtained evidence, securing a preliminary examination or hearing on a suggestive eyewitness identification, obtaining expert assistance, speaking to the court about inherent unfairness in the proceedings, setting out arguments for bond, or creating a proposed alternative disposition.  Guideline 5.1 of the *NLADA Performance Guidelines for Criminal Defense Representation* as well as Rule 723(B) of the LPDB Performance Guidelines state that the "decision to file pretrial motions should be made after thorough investigation, and after considering the applicable law in light of the circumstances of each case." The Commentary to the NLADA Performance Guidelines notes that while the guidelines do not mandate filing motions, it does "mandate that counsel consider all potentially appropriate pretrial motions, so that the absence of pretrial motions is a result of professional choice, not negligence or inexcusable error."

The site visit did not reveal a vigorous motion practice in the 22nd PDO. While the site visit did not include file reviews, interviews with staff attorneys revealed that most cases contain only a routine bond reduction motion, a motion for discovery, and few other motions.  Bond reduction motions are prepared by support staff and are not client specific.  A secretary related that one attorney withdraws many bond reduction motions and has to be reminded of the need to file them. It appears that bond reduction motions while being routinely filed often take

4-6 weeks to be heard, partly because attorneys are not pushing to have their motions heard. There are few if any sentencing motions. There are "Wallace motions[4]" that are routinely filed by the office after the first assistant reviews the documents for violations of the requirement that probable cause be determined within 48 hours (*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991)). One lawyer stated that he had just filed five Wallace motions and three had been granted. All three were then re-arrested on a warrant. One conflict lawyer stated that public defenders are punished for filing motions to suppress and for going to trial. One of the staff lawyers lamented that she did not file motions other than discovery motions because of her caseloads. The office does not have a motion bank. One staff attorney revealed that he was chastised by Mr. Simmons for requesting a transcript needed to challenge a DUI.

### 3.   Preliminary Examinations

Guideline 3.2 of the *NLADA Performance Guidelines* as well as Rule #715(A) state that where "the client is entitled to a preliminary hearing, the attorney should take steps to see that the hearing is conducted timely unless there are strategic reasons for not doing so." The commentary to this guideline also says that "Heavy caseloads or chronically late appointment by the courts of counsel for indigent clients...should not be used to routinely justify ignorance by counsel of facts at the time of preliminary hearing." Likewise, LPDB's Performance Standards, Sec. 715, state that the attorney should "take steps to see that the hearing is conducted in a timely fashion unless there are strategic reasons for not doing so."

Preliminary examinations are an important part of the criminal process. Bond can be lowered allowing the defendant to go back to work and be restored to his family. Cases can fall apart at the preliminary hearing. The judge can find no probable case. The prosecutor can decide to resolve the case at that stage. An early plea to a misdemeanor can occur after testimony is taken. Defendants can be diverted out of the criminal process and into drug or mental health treatment. Witnesses can be required to testify before their memories fade or are shaped by the parties. Clients can see what the evidence is against them and can also see how their attorney fights for them.

Compare this to what the typical 22nd PDO client experiences. He is arrested and some 1-3 days later appears at the 72-hour hearing. The prosecution has 60 days in which to file a bill of charges. During that time, the client seldom sees his lawyer. While a preliminary examination can be demanded, that seldom happens. The client does not see or confront his primary accuser. He has no opportunity to plead to a misdemeanor. His attorney does not obtain valuable impeachment evidence. Often the client does not do anything other than sit in jail until the time of his arraignment. None of the advantages inherent in the holding of preliminary examinations is occurring on a regular basis in the 22nd Judicial District.

Why are preliminary examinations virtually nonexistent? The consultant found that there is no culture or practice of viewing preliminary examinations as a valuable part of the process or as having any particular benefit. The expressed reason for this is that the DA's Office practices

---

[4] *State v. Wallace*, 2009-KK-1621 (La.11/06/2009); 25 So. 3d 720.



Kelton L. Spann #325770
St Tammany Parish Jail
P.O. Box 908    C616
Covington, La 70434

U.S. District Court / Eastern District
(Clerk of Court)  500 Poydras Street  Room C-151
New Orleans, La 70130

PRIVILEGED LEGAL MAIL   NOT CENSORED
ST. TAMMANY PARISH JAIL

LEGAL
MAIL