## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**KELTON SPANN**                                                         **CIVIL ACTION**

**VERSUS**                                                                      **NO. 16-3723**

**WARDEN GREG LONGINO**                                      **SECTION: "J"(3)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

On August 4 and 29, 2011, petitioner, Kelton Spann, pleaded guilty and was sentenced as follows under Louisiana law:  possession of hydrocodone, five years; possession with intent to distribute cocaine, fifteen years, with the first two years to be served without benefit of probation, parole, or suspension of sentence; possession of marijuana, six months; possession of a firearm by a convicted felon, ten years without benefit of probation, parole, or suspension of sentence; and production and/or manufacture of crack cocaine, fifteen years, with the first five years to be served without benefit of probation, parole, or suspension of sentence.  It was ordered that his sentences

be served concurrently.[1]  On December 21, 2012, the Louisiana First Circuit Court of Appeal affirmed his convictions and sentences.[2]  The Louisiana Supreme Court then denied his related writ application on August 30, 2013.[3]

On September 23, 2013, petitioner filed an application for post-conviction relief with the state district court.[4]  That application was denied on January 2, 2014.[5]  His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on June 4, 2014,[6] and by the Louisiana Supreme Court on May 15, 2015.[7]

On or about April 21, 2016, petitioner filed the instant federal application seeking habeas corpus relief.[8]  The state has filed a response arguing that relief should be denied on the merits,[9] and petitioner filed a reply to that response.[10]

## **Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

---

[1] State Rec., Vol. 1 of 5, minute entries dated August 4 and 29, 2011; State Rec., Vol. 1 of 5, transcript of August 4, 2011.
[2] State v. Spann, No. 2011 KA 2366, 2012 WL 6677761 (La. App. 1st Cir. Dec. 21, 2012); State Rec., Vol. 2 of 5.
[3] State v. Spann, 120 So.3d 259 (La. 2013); State Rec., Vol. 2 of 5.
[4] State Rec., Vol. 2 of 5.
[5] State Rec., Vol. 2 of 5, Order and Reasons dated January 2, 2014.
[6] State v. Spann, No. 2014 KW 0228 (La. App. 1st Cir. June 4, 2014); State Rec., Vol. 2 of 5.
[7] State ex rel. Spann v. State, 170 So.3d 156 (La. 2015); State Rec., Vol. of 5.
[8] Rec. Doc. 3.
[9] Rec. Doc. 10.
[10] Rec. Doc. 11.

state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

## Facts

With respect to the facts of this case, the Louisiana First Circuit Court of Appeal noted on direct appeal:

> Because the defendant pled guilty, the facts were not developed at a trial. On January 21, 2010, Detective Lieutenant Donald Ray Phelps, with the Bogalusa Police Department, executed a search warrant on the defendant's residence.  The

return on the search warrant indicates that officers seized various items from the defendant's residence, including ten grams of suspected crack cocaine, a 9mm pistol, .22 rifle, suspected marijuana, suspected hydrocodone, assorted plastic baggies, two measuring cups containing suspected cocaine, and a Digiweigh scale.[11]

## Petitioner's Claims

## Sixth Amendment

Petitioner claims that he was denied his Sixth Amendment right to the effective representation of counsel in connection with a suppression hearing.  In the state post-conviction proceedings, the state district court denied that claim, holding:

> Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) sets forth the standard for analyzing ineffective assistance of counsel claims as follows:
>
>> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
>
> Petitioner states that he forwarded a letter to appointed counsel James Talley on March 11, 2011 requesting a copy of the police report.  When no report was forthcoming, less than two months later Petitioner filed a complaint against Talley with the Attorney Disciplinary Board, after which the report was delivered.  There is no evidence that this delay resulted in any prejudice to Petitioner.
>
> After the report was delivered, Petitioner states that he informed Talley that he was not at the Dan Street residence until 5:30 pm because he was working as a

---

[11] State v. Spann, No. 2011 KA 2366, 2012 WL 6677761, at *1 (La. App. 1st Cir. Dec. 21, 2012); State Rec., Vol. 2 of 5.

delivery driver from 7:30 am to 3:30 pm.  He also asserts that he did not reside at the Dan Street address, and at there were three people present when the warrant was executed.  Those three individuals would testify that only two other people came to the house from 5:30 pm until service of the warrant.  He complains that Talley failed to subpoena those three individuals to testify at the Suppression hearing.

The Indigent Defender's Office filed several motions as did Petitioner, including a Motion to Act as Co-Counsel.  On June 17, 2011 the court took up those motions, the first being Petitioner's motion relative to representation.

While <u>CCrP Art 511</u> announces a defendant's right both to counsel and to self representation, the presiding judge[FN1] stated that the cited article provided for <u>either</u> counsel <u>or</u> self representation, but not both.  After advising Petitioner of the perils of self-representation, and considering Petitioner's paralegal certificate and three years of college, the court offered Petitioner the option to either represent himself or to be represented.  The court permitted Petitioner and counsel to confer over the lunch break after which the court asked "Is it your desire to waive counsel in this case and represent yourself?" to which Spann responded "Yes, only for this proceeding."  Later, the court stated, "All right.  And I can tell you he presents himself as a person of some understanding and education.  I think he's making a knowing and intelligent waiver and therefore, I am going to allow him to waive counsel.  He will now proceed as his own attorney."

> [FN1]  The Honorable William J. Crain presided over the case at bar until he was elected to the First Circuit Court of Appeal effective January 1, 2013.

Petitioner maintained that the evidence should be suppressed due to the following deficiencies in the affidavit in support of the search warrant:  failing to state that the informant was reliable, the absence of the identity of the known drug dealers and informant, and the incorrect statement that Spann had been arrested for possession of up to 400 grams of cocaine.  Petitioner argued that those defects rendered the warrant invalid.  However, Spann failed to ask any questions about the factual basis for issuance of the warrant which included surveillance of Petitioner's home conducted by law enforcement officers over several hours during which several individuals known by local police to be involved in drug trafficking in the area, were seen coming and going to the residence throughout the day.

In his written pro se Motion to Suppress which was supported by proper citations to case law, Petitioner argued that the affidavit in support of the search warrant lacked sufficient information about the informant to lead to a finding of probable cause sufficient to authorize a warrant.  Petitioner's cross examination of Lt. Donald Ray (D. Ray) Phelps was very limited.  In essence, all Phelps was asked was to identify the affidavit and Petitioner's criminal record, and whether the witness was familiar with that record.

As to the erroneous statement regarding Spann's conviction for possession of up to 400 grams of cocaine, Phelps offered a reasonable explanation and pointed

to petitioner's prior conviction for possession with intent to distribute.  No other questions were asked of Phelps, nor any other evidence offered or other testimony had.  Significantly, no instanter subpoenas were requested.  The Court then took the motion under advisement.

CCrP Art 703 provides in pertinent part "On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion."  As "proof" of the fact that he was working at the time, Petitioner offers his pay stub for the two week pay period at issue.  However, the stub shows only that he worked 41 hours, not the specific times or dates.  Further, Petitioner states that he was employed as a delivery driver, suggesting that he could arrange his schedule, at least some degree.  Lastly, the pay stub evidences that 908 Dan Street was, in fact, Spann's residence address.

Petitioner points out the following language in the affidavit:  "numerous known drug dealers were in and out of the residence and that there were traffic in and out of the residence consistent with narcotic trafficking."  He claims that Talley's failure to subpoena three individuals who were present when the warrant was executed was deficient and prejudiced his case.

However considering the numerous pleadings Spann filed pro se he certainly had the legal knowledge to make such a request pro se.  He could also have requested instanter subpoenas on the day of the hearing.  Finally, even if those individuals had testified that they were at 908 Dan Street from 5:30 pm until the police came, that testimony would not refute the fact that earlier in the day, members of law enforcement conducted surveillance of the residence and witnessed what they believed to be drug trafficking.[FN2]  Petitioner also faults Talley in failing to put him on the stand at the Suppression hearing.  If Spann wanted to testify, he could have done so without the need of counsel's calling him to the stand.

[FN2]  Petitioner also argues somewhat circuitously that if drug trafficking had been suspected, that those three individuals should have been arrested.  This court is unable to discern what legal theory Petitioner is trying to put forth in this regard.  If Petitioner is attempting to argue that the drugs found belonged to one of those other individuals, Petitioner could still have been charged as a principle, considering that he provided his employers with 908 Dan Street as his residence, other mail in his name was delivered there, furniture was present including a television set, as well as men's clothes and two loaded firearms.

Petitioner argues in his 23 page memorandum, that Talley "induced" him to represent himself.  The record does not support this assertion.  Spann filed a formal motion requesting self representation prior to the hearing.  All of Petitioner's arguments regarding deficient performance at the suppression hearing are without merit in that Petitioner acted as his own counsel after having been cautioned about the risks.

8

On July 20, 2011 the court denied the Motion to Suppress[FN3].  On August 4, 2011 Petitioner elected to plead guilty as charged under State v. Crosby, 338 So. 2d 584 (La. 1976).  The court deferred imposition of sentence until August 29, 2011 and the State agreed not to file a Habitual Offender Bill of Information.  After imposition of sentence, an appeal was lodged with regard to the denial of the suppression motion and the First Circuit affirmed the trial court with the Supreme Court declining to grant writs.

> [FN3]  It appears that in that less than 5 week period of time, Petitioner filed a Writ of Mandamus with the First Circuit Court of Appeal which was dismissed as moot on August 1, 2011.

Petitioner's second claim is that Lt. D. Ray Phelps and Trooper Heath Miller used illegal tactics in violation of Petitioner's rights under the 14th Amendment.  In this regard he postulates that some twenty years before while he and Phelps were students at Bogalusa High School, several encounters between the two "fueled a personal grudge" by Phelps against the Petitioner.  Furthermore, officer Heath Miller likewise was "outraged" at Spann for "relinquishing his agreement with him on being a confidential informant in 2007."  Spann argues, without any support whatsoever, that these two members of law enforcement, convinced another convicted felon to plant drugs at a residence that he likewise argues is not his and doctored the recording of Spann's statement after arrest.  The court was not asked, either by the State or Spann, to review any statements.  Therefore, it did not rely on same in its ruling on the Motion to Suppress.  The police report mentions Spann's defense that the drugs belonged to Derrick May.  If he were convinced that this defense would win the day at trial, Petitioner had that option.  However, Spann chose instead to enter a guilty plea subject to appeal of the suppression motion.

In the context of a guilty plea, in order to establish the Strickland prejudice prong, a defendant must prove that there is a reasonable probability that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 102 S. Ct. 366, 370 L. Ed.2d 203 (1985).  At the time of his plea on the subject charges, Spann faced the possibility of adjudication as a habitual offender which certainly would have added time to his sentence.  Petitioner does not specifically argue that his attorney advised him to enter his plea.  However, if he is making such a claim, the facts do not suggest the probability of Spann's election to proceed to trial.

Petitioner bears the burden of proof under CCrP Art 930.2 and he has failed to meet that burden.  For these reasons, the court denies Petitioner's application for post-conviction relief.[12]

---

[12] State Rec., Vol. 2 of 5, Order and Reasons dated January 2, 2014.

Without assigning additional reasons, petitioner's related writ applications were then denied by the Louisiana First Circuit Court of Appeal[13] and by the Louisiana Supreme Court.[14]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

---

[13] State v. Spann, No. 2014 KW 0228 (La. App. 1st Cir. June 4, 2014); State Rec., Vol. 2 of 5.
[14] State *ex rel.* Spann v. State, 170 So.3d 156 (La. 2015); State Rec., Vol. of 5.

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.*

Id. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt."  Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims:  Strickland v. Washington, 466 U.S. 668 (1984).  Strickland established a two-prong test for evaluating such claims.  Specifically, a petitioner

seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. More specifically, in order to satisfy the

prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

As noted, petitioner represented himself at the suppression hearing, and his first contention is that he was coerced to do so.  For the following reasons, that contention should be rejected.

Prior to the suppression hearing, petitioner filed a "Motion to Act as Co-Counsel."[15]  At the commencement of the hearing, that motion was addressed as follows:

MR. TALLEY [defense counsel]:
Your Honor, we will – if I may just briefly, Your Honor, it's often the situation where, you know, people have their, you know, the right to exercise their rights, sometimes it's a situation where I'm quietly closing my eyes and maybe rolling them behind my lids.  This is not that situation.  I guarantee the Court this is not going to turn into some kind of circus because of Mr. Span's [sic] participation.  Only if he –

THE COURT:
Counsel, I want counsel to address this for me real quick.  Under article 511, it says the accused in every instance has the right to defend himself and to have the assistance of counsel.  I do not interpret that to mean that he has the right to represent himself as counsel and have another attorney as co-counsel.  I don't read it that way.  And I would like for you all, the lawyers, to address your understanding of that article.

MR. MURRAY [the prosecutor]:
Briefly, Your Honor, the State's understanding is that he has the right after the Court makes the inquiry, might possibly, to represent himself.  And the Court in some cases, I have seen or heard of the courts appointing an attorney to advise but not act as co-counsel in the sense of co-counsel.  And I'm not –

THE COURT:
Right.

MR. MURRAY:

---

[15] State Rec., Vol. 1 of 5.

-- there is a distinction, although --

THE COURT:

No.  And I can – he has the right to represent himself, but once he chooses that he has waived his right to appointed counsel, unless I decide that he needs shadow counsel.

MR. MURRAY:

Exactly.  That's –

THE COURT:

Mr. Talley, you've got a smile on your face.

MR. TALLEY:

Well, you know, Your Honor, only in that it is an unusual situation.  We've got – we've discussed this matter at some length.  He's got, you know, we've got to put the policeman on the stand.  We may have to listen to a, a C.D. of the, of the – well, of the alleged confession, although that's actually – we may not even need to do that because we're not alleging any procedural problems with the statement.  Is – we're alleging that the statement would fall if the warrant would fall, but I'm getting ahead of myself.

In this situation Mr. Spann has devoted considerable time and effort to this.  That was clear to me from the very first time I spoke with him and is ready to participate and has an argument that he's – that I've gone over with him that – that is appears to my mind to be legally sound and well constructed, and repeats himself less than many trained attorneys I've seen; and he'd like an opportunity to make that argument and I'd like to have him have the opportunity.

THE COURT:

All right, this is the thing:  He does not have the right to be both represented and the representative.

Mr. Spann, you have the – is it your desire that you waive counsel?

MR. SPANN:

May I speak, Your Honor?

THE COURT:

I'm asking you:  Is it your desire to waive counsel in this case?

MR. SPANN:

No, sir.  I just would like to participate in the case in regards to the effects of the affidavit.  I have did extensive research on this case, and I am a paralegal.  I do have extensive education, two-year education.  I have a paralegal certificate right here; it's a copy.

THE COURT:

You have the right, obviously, in defense to consult with your attorney and to, and to allow him to represent you.  Otherwise, you are going to be waiving your attorney and you have that right to waive it.  I wouldn't – I mean, all I can do is tell you what you're giving up when you waive an attorney.

But you've indicated that you don't want to waive your attorney, and I will allow you to consult with your lawyer; but Mr. Talley is going to be your lawyer and act as your lawyer in this case.

MR. SPANN:

Well, Your Honor, may I speak for a second?

THE COURT:

I tell you what:  You-all it's quarter to 2.  We're recessing and coming back at 2:30.[16]

The Court then recessed, and petitioner's discussions with his counsel concerning the

matter were, obviously, off the record.  After the recess, the trial court returned to the issue:

THE COURT:

Let's proceed.  Which motion do we have first?

MR. TALLEY:

The motion to act as – well if not as co-counsel, to represent himself, Your Honor.

THE COURT:

And I have – I'm going to ask you again, Mr. Spann, is it your desire to waive counsel in this case and represent yourself?

MR. SPANN:

Yes, only for this proceeding.

MR. TALLEY:

Well – just –

MR. SPANN:

Yes, yes.

MR. TALLEY:

---

[16] State Rec., Vol. 1 of 5, transcript of June 17, 2011, pp. 5-9.

And I will consent to act as his advisor, Your Honor, but he's representing himself.

THE COURT:

You've discussed it with him, Mr. Talley?

MR. TALLEY:

I have, Your Honor, in detail.

THE COURT:

And you believe that he's aware of any risk and pitfalls that may confront him by representing himself?

MR. TALLEY:

More aware than almost any client I've ever represented, Your Honor.  He's –

THE COURT:

Mr. Spann, you understand that you have a right to an attorney.  Mr. Talley has been appointed up to this point to represent you.  You understand that?

MR. SPANN:

Yes, sir.

THE COURT:

You understand that you are going to be going forward now and representing yourself and that there may be things that come up, situations that come up that you are not trained, experienced, to handle.  You realize that?

MR. SPANN:

Yes, sir.

THE COURT:

And it's your desire to proceed in this fashion?

MR. SPANN:

Yes, sir.

THE COURT:

All right.  Proceed.

MR. MURRAY:

Is this just for today's hearing or for the remainder of this case?

THE COURT:

I'm going to tell you what: I'm not sure that you can pick and choose which proceedings. I'm viewing this as a waiver of counsel. If he wants to have an attorney come back and represent him, I'll look at the law at that time and see if that's required; but I can tell you that I'm not going to allow him to represent himself in one motion, not in the next one, represent himself in one hearing and not the next one.

MR. TALLEY:

If I may, Your Honor.

THE COURT:

Sure.

MR. TALLEY:

In understand that and he understands that. We're not going to be trying to bounce back and forth, you know. What the future holds, you know, nobody can predict the future; but I promise the Court I would not be party to some sort of, you know, games, gamesmanship and trying to bounce in and out.

THE COURT:

My view right now, Mr. Spann, is that as of today if I grant your motion, you are your lawyer, okay? The only way that you get appointed counsel again is if you request it and I grant it. All right? But you are your lawyer from this point forward, if that's what you desire to do.

(DISCUSSION OFF THE RECORD.)

MR. SPANN:

I understand, Your Honor.

THE COURT:

All right. I'm going to grant Mr. Spann's request. I feel that he's been fully advised of his right to counsel in this case.

How old are you, Mr. Spann?

MR. SPANN:

Forty-one years old, Your Honor.

THE COURT:

Extent of your education?

MR. SPANN:

I have three years of college.

THE COURT:

All right.  And I can tell you that he presents himself as a person of some understanding and education.  I think he's made a knowing and intelligent waiver and, therefore, I am going to allow him to waive counsel.  He will now proceed as his own attorney.[17]

To the extent that petitioner is contending that trial court "coerced" him into representing himself by refusing to allow him to act merely as co-counsel, that contention is untenable. Petitioner had no right to act as a co-counsel under either state or federal law.  Under state law, a Louisiana trial court *may* grant a request for hybrid representation of that type; however, such an arrangement is considered problematic, and a defendant has no right to such an arrangement.  State v. Penson, 630 So.2d 274, 277 (La. App. 1st Cir. 1993) ("While a defendant has the right to counsel as well as the right to self-representation, he has no constitutional right to be both represented and representative. …  Although a trial court is not prohibited from using hybrid arrangements, such arrangements present inherent difficulties.").  The same is obviously true under federal law.  The United States Fifth Circuit Court of Appeals has explained that although a criminal defendant "possesses the right to counsel as well as the right to self-representation, there is *no* constitutional right to have both through a 'hybrid representation' scheme."  Randolph v. Cain, 412 Fed. App'x 654, 658 (5th Cir. 2010) (citing McKaskle v. Wiggins, 465 U.S. 168, 182 (1984)); accord United States v. Cano, 519 F.3d 512, 516 (5th Cir. 2008) ("Cano sought to engage in hybrid representation whereby he and his attorney would act as co-counsel.  There is no constitutional right to such form of representation ….").  Therefore, the trial court did not act improperly in refusing to proceed in the manner petitioner desired and in requiring him instead to choose either to continue to be

---

[17] State Rec., Vol. 1 of 5, transcript of June 17, 2011, pp. 9-12.

represented by Talley or to represent himself. The fact that petitioner was not enamored of either of those two options does not transform the judge's action into an impermissible form of coercion.[18]

To the extent that petitioner is contending that he was coerced by Talley, that claim fares no better. Specifically, petitioner next argues that he was "coerced and/or induced to represent himself at the suppression hearing" in a conversation with Talley.[19] However, petitioner does not explain precisely what Talley said that was tantamount to coercion or undue inducement. Further, and more importantly, petitioner failed to present any evidence in support of his self-serving allegation. It is beyond cavil that a petitioner bears the burden of proof in a federal habeas corpus proceeding. See, e.g., Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). Obviously, a petitioner fails to meet that burden when, as here, he produces no evidence whatsoever in support of his conclusory allegations. See, e.g., Marshall v. Cain, Civ. Action No. 5:12-cv-2914, 2014 WL 782866, at *10 (W.D. La. Feb. 25, 2014), aff'd, 616 Fed. App'x. 202 (5th Cir. 2015), cert. denied, 130 S. Ct. 2015 (2016); Foreman v. Cain, Civ. Action No. 07-4200, 2008 WL 1746710, at *6 (E.D. La. Apr. 14, 2008).

The undersigned is aware that petitioner now complains that his lack of such evidence stems from the fact that he was not afforded a post-conviction evidentiary hearing in the state courts.[20] However, that argument is unavailing. Louisiana law expressly provides for summary disposition of post-conviction applications: "If the court determines that the factual and legal

---

[18] Out of an abundance of caution, the undersigned also notes that petitioner likewise had no right to insist that the court appoint him someone other than Talley to act as defense counsel. "The Sixth Amendment provides criminal defendants with a right to counsel, but the 'right to counsel of choice does not extend to defendants who require counsel be appointed to them.'" United States v. Gonzalez-Lopez, 548 U.S. 140, 151 (2006).

[19] Rec. Doc. 11, pp. 3 and 6-7.

[20] See, e.g., Rec. Doc. 11, p. 8.

issues can be resolved based upon the application and answer, and supporting documents,

including relevant transcripts, depositions, and other reliable documents submitted by either party

or available to the court, the court may grant or deny relief without further proceedings." La. Code

Crim. P. art. 929(A).  Further, the state court's decision on such matters is not reviewable in federal

court.  As one court recently explained:

> To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding.  In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A).  Federal courts "do not sit as a super state supreme court...." Taylor v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983).  Thus, it is not the province of this court to determine if the state courts properly applied state law.  Id. citing Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998).  Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254.  Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14,

2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Smith v. Terrell, Civ. Action

No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).

The Court further notes that petitioner also is not entitled to a federal evidentiary hearing

to secure new evidence at this stage of review.  On the contrary, the United States Supreme Court

has expressly stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law.  This backward-looking language requires an examination of the

20

state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court.

This understanding of the text is compelled by "the broader context of the statute as a whole," which demonstrates Congress' intent to channel prisoners' claims first to the state courts. The federal habeas scheme leaves primary responsibility with the state courts. Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*.

Limiting § 2254(d)(1) review to the state-court record is consistent with our precedents interpreting that statutory provision. Our cases emphasize that review under § 2254(d)(1) focuses on what a state court knew and did. State-court decisions are measured against this Court's precedents as of the time the state court renders its decision. To determine whether a particular decision is "contrary to" then-established law, a federal court must consider whether the decision applies a rule that contradicts such law and how the decision confronts the set of facts that were before the state court. If the state-court decision identifies the correct governing legal principle in existence at the time, a federal court must assess whether the decision unreasonably applies that principle to the facts of the prisoner's case. It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.

Cullen v. Pinholster, 563 U.S. 170, 181-83 (2011) (citations, quotation marks, brackets, and ellipsis omitted).

Lastly, the Court will address two additional issues that appear to be implicated by petitioner's claim, i.e. that Talley provided ineffective assistance *prior* to petitioner's decision to represent himself at the hearing and that petitioner was denied his right to the effective assistance of counsel at the suppression hearing by virtue of his waiver of counsel. Neither of those contentions has merit.

As to Talley's performance, petitioner argues that Talley was ineffective in preparing for the suppression hearing in that he failed to interview Renard Brown, Ricardo Brown, and Curtis Harris and to subpoena them to appear at the suppression hearing. The problem, however, is that,

once again, petitioner's assertions are unsupported by even a scintilla of evidence.  As an initial

matter, the Court notes that petitioner has presented no actual evidence showing that defense

counsel failed to interview the proposed witnesses.  Nonetheless, even if petitioner were able to

establish that fact, that alone would not suffice.  Petitioner must further establish that the proposed

witnesses would in fact have supported his version of events if they had been interviewed, and he

has utterly failed to make that showing.  That defect is fatal, because a petitioner's bare speculation

as to what additional investigation would have revealed is insufficient to prove his claim.  See

Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

That same defect also exists with respect to petitioner's related claim that counsel was

ineffective for failing to call the purported witnesses to testify at the suppression hearing.  As the

United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal
> habeas review because the presentation of witnesses is generally a matter of trial
> strategy and speculation about what witnesses would have said on the stand is too
> uncertain.  For this reason, *we require petitioners making claims of ineffective
> assistance based on counsel's failure to call a witness to demonstrate prejudice by
> naming the witness, demonstrating that the witness was available to testify and
> would have done so, setting out the content of the witness's proposed testimony,
> and showing that the testimony would have been favorable to a particular defense.*
> This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets

omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o

prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner

must name the witness, demonstrate that the witness was available to testify and would have done

so, set out the content of the witness's proposed testimony, and show that the testimony would

have been favorable to a particular defense.").

Here, petitioner presented no evidence, such as affidavits from the uncalled witnesses, demonstrating that they would have testified in a manner beneficial to the defense.  Therefore, again, he obviously failed to meet his burden of proof with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Finally, as to petitioner's contention that he was denied his right to the effective assistance of counsel at the suppression hearing by virtue of his waiver of counsel, that claim warrants little consideration.  Petitioner simply cannot have it both ways.  As the United States Supreme Court has observed, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"  Faretta v. California, 422 U.S. 806, 834 n.46 (1975); accord Castillo v. Stephens, 640 Fed. App'x 283, 295

(5th Cir. 2016) ("The Supreme Court has strongly and sensibly suggested that no ineffective assistance of counsel claims can lie where a defendant undertakes self-representation.").

In summary, it is clear that petitioner has not demonstrated that the state court decision rejecting his Sixth Amendment claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### Fourth Amendment

Although he did not separately and expressly address the claim in his accompanying memorandum, petitioner indicates on his form petition that he is also reasserting the related Fourth Amendment claim rejected by the state courts. If so, this Court is barred from reviewing that claim by Stone v. Powell, 428 U.S. 465 (1976).

In Stone, the United States Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial." Id. at 494 (footnote omitted); see also Janecka v. Cockrell, 301 F.3d 316, 320 (5th Cir. 2002). The Stone bar applies even if the state court rulings regarding the Fourth Amendment claims were in fact erroneous. Swicegood v. Alabama, 577 F.2d 1322, 1324 (5th Cir. 1978).

The United States Fifth Circuit Court of Appeals has interpreted "full and fair" consideration of a Fourth Amendment claim to include the availability of "at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when the facts are in

dispute, and full consideration by an appellate court when the facts are not in dispute."  Caver v. Alabama, 577 F.2d 1188, 1191 (5th Cir. 1978) (construing O'Berry v. Wainwright, 546 F.2d 1204, 1213 (5th Cir. 1977)).  The "opportunity" for full and fair litigation exists as long as the state provides the petitioner with processes by which he can obtain full and fair consideration, without regard to whether he actually utilizes those processes.  Caver, 577 F.2d at 1192 ("An 'opportunity for full and fair litigation' means just that: an opportunity."); see also Janecka, 301 F.3d at 320.

In the instant case, petitioner asserted a Fourth Amendment claim in the state district court, where he was afforded an evidentiary hearing, and he challenged the denial of that claim in both the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.  Because he was afforded a full and fair opportunity to litigate his Fourth Amendment claim in state courts, Stone bars this Court from considering that claim.

## RECOMMENDATION

It is therefore **RECOMMENDED** the federal application for habeas corpus relief filed by Kelton Spann be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[21]

New Orleans, Louisiana, this first day of December, 2016.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[21] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.